## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARLEYSVILLE WORCESTER INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 19-1251 |
| v. | ) ) | Judge Cathy Bissoon |
| PEDIATRIC ASSOCIATES OF WESTMORELAND, LTD., AMY N. KING, an interested party and TAYLOUR RICHTER, as an interested party, | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

### I.     MEMORANDUM

Pending before the Court are Plaintiff Harleysville Worcester Insurance Company's

Motion to Dismiss Defendant Pediatric Associates of Westmoreland, LTD.'s Bad Faith

Counterclaim ("Pl. MTD," Doc. 35) and Defendant's Motion to Stay ("Def. MTS," Doc. 42).

For the reasons that follow, Defendant's Motion to Stay will be granted and Plaintiff's Motion to

Dismiss will be denied without prejudice subject to renewal.

**A. Defendant's Motion to Stay**

Defendant filed its Motion to Stay and Brief in Support ("Def. Brief ISO," Doc. 43)

asking the Court to stay this action until the conclusion of an underlying civil lawsuit filed by

Taylour Richter ("Ms. Richter,") as parent and natural guardian of minor K. Richter against Amy

N. King, RN, CPNP ("Ms. King,") and Defendant in the Court of Common Pleas of

Westmoreland County, Pennsylvania, Case No. 19CI03630 ("Underlying Lawsuit").  Defendant

acknowledges that this Court already has determined that jurisdiction over this action is

appropriate, but argues that certain factors under <u>Reifer v. Westport Insurance Corporation</u> weigh in favor of a stay at this time.  751 F.3d 129 (3d Cir. 2014).  According to Defendant, the Court cannot grant Plaintiff's relief until the Underlying Lawsuit is resolved.  Def. Brief ISO at pg. 3. Plaintiff filed a Response in Opposition ("Pl. Response," Doc. 45) and accompanying Brief in Opposition ("Pl. Opp.," Doc. 46), arguing that the Underlying Lawsuit is not parallel to the instant case, and that this case is not dependent on any facts in the Underlying Lawsuit as the issue before the Court is solely based on whether Defendant's insurance policy, issued by Plaintiff, provides coverage for the Underlying Lawsuit.  Pl. Opp. at pg. 3.  However, the case at hand is not as cut and dry as Plaintiff would have the Court believe.

Plaintiff is correct that the standard for determining whether to stay a declaratory judgment relies heavily on whether the action pending in state court is parallel to the instant action.  Pl. Opp. at pg. 2.  After determining whether there is a "parallel state proceeding" — a significant factor, albeit not a dispositive one — the Court then should weigh the opposing factors outlined in <u>Reifer</u>.  <u>Kelly v. Maxum Specialty Ins. Grp.</u>, 868 F.3d 274, 282 (3d Cir. 2017).  The Court agrees with Plaintiff that the Underlying Lawsuit is not parallel because Plaintiff is not a party to that lawsuit, nor is the issue of coverage present in that lawsuit. Nonetheless, contrary to Plaintiff's contentions, the Court does not find the facts of <u>Kelly</u> analogous to this situation.

Specifically, Plaintiff is correct in noting that in <u>Kelly</u>, there clearly is no overlap between the facts of the liability lawsuit pending in federal court and the underlying lawsuit in state court.  However, the Court notes that the facts of this case are more in line with an exception cited in a footnote to <u>Kelly</u>, in which the Court of Appeals for the Third Circuit explicitly noted the possibility that "in certain circumstances…[where] determining the issue of

coverage will rely on questions central to the underlying liability proceeding."  287 n.12 (citing a

case where the "insurer disclaimed coverage on the basis that the plaintiffs were the defendant's

employees, an issue already in dispute in a pending state lawsuit").  Similarly here, Plaintiff, the

insurer, is disclaiming coverage on the basis that the Underlying Lawsuit is based on facts related

to whether the defendants were negligent, and the type of negligence involved.  This is in stark

contrast to the facts in Kelly.

As such, the Court finds it appropriate to weigh the other Reifer factors.  In Reifer, the

Court of Appeals for the Third Circuit outlined the following factors for district courts to

consider:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;
> (5) a general policy of restraint when the same issues are pending in a state court;
> (6) avoidance of duplicative litigation;
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata;* and
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Reifer, 751 F.3d at 146.

Although some of these factors are neutral, the Court is particularly concerned about the

potential for duplicative litigation.  While the primary issue in the declaratory action is coverage,

whether coverage exists is substantially entangled in the facts of liability in the Underlying

Lawsuit such that, although the cases are not strictly parallel, proceeding in this case while the

Underlying Lawsuit proceeds on a separate track could lead to inconsistent results.

Largely, the issue stems from the parties' dispute over what actions led to the unfortunate injury of K. Richter.  Plaintiff maintains that there is no dispute over the facts because it maintains the false dichotomy that there is either medical malpractice or no duty, and thus no negligence.  It completely overlooks the possibility that is at the very core of this dispute: that accidents can arise on medical facilities that may not be the result of malpractice.  The Underlying Lawsuit pursues theories of both of negligence and professional negligence. The ultimate findings in the Underlying Lawsuit are critical to the Court's analysis because one theory is covered under the policy (negligence) and one theory is not (professional negligence).

Unfortunately, neither the language of the policy nor Pennsylvania state law is sufficiently clear to make this a clear question of law or contractual interpretation.  Defendant contends that the actions in the Underlying Lawsuit are not due to rendering or failing to render professional services and not subject to the exception in the policy.  Defendant argues that this is so because King's examination had concluded.  Plaintiff argues that this fact does not matter.  Pl. Response ¶12-13.  The Court disagrees.

What happened when and how are all fact-intensive inquiries that are at the heart of the Underlying Lawsuit.  And, while the Pennsylvania Supreme Court has not addressed what facts constitute ordinary versus professional negligence, the Superior Court has found that certain incidents at medical facilities fall into the category of medical malpractice (professional negligence), while others are simple negligence.  One of the important factors distinguishing these cases is whether the examination concluded.  For example, in Galeano v. Susquehanna Health System, plaintiff underwent an evaluation for physical therapy.  At the end of the evaluation, he acknowledged that he was tired but declined a wheelchair.  As he was walking with his cane out of the facility, he tripped and fell over an automated mat that opened doors in

4

the hallway. The trial court found that the claim was grounded in medical malpractice, but the Superior Court reversed and found that the plaintiff's fall occurred as he was "making his way toward the building's exit, not in the course of treatment or any professional relationship with Appellees." 2017 WL 2197007 at *6 (Pa. Super. May 17, 2017). Unfortunately, at this time, without the benefit of additional facts, the Court is unable to discern whether the examination concluded and who was responsible for the safety of the minor child at the time of his fall.

Here, these facts are in dispute and being litigated in the Underlying Lawsuit, and to engage in discovery and litigate these fact-driven issues in this Court would be unnecessarily duplicative and a waste of resources.

Although neither party addresses the potential for conflict on Plaintiff's part, this does relate to Defendant's contention that it may be forced to advance contradictory defenses in this Court that could undermine its ability to defend itself in the Underlying Lawsuit. For example, if Defendant argues that its actions constitute ordinary negligence, that would prejudice its ability to deny all negligence in the Underlying Lawsuit. Similarly, Plaintiff's primary interest in this action is to demonstrate that the facts of the Underlying Lawsuit constituted professional negligence, not necessarily that no negligence occurred, although that would be the desired outcome for Defendant in the Underlying Lawsuit, so that Plaintiff can disclaim all coverage.

The Court understands that Plaintiff brought this declaratory judgment to determine its obligation to defend and indemnify Defendant, and that it will need to continue to pay the costs associated with defending Defendant in the Underlying Lawsuit until this Court determines coverage. Nonetheless, the Court finds that the potential prejudice to Defendant, as well as the duplicative and inefficient nature of proceeding on two separate tracks outweigh the prejudice to Plaintiff.

**B. Plaintiff's Motion to Dismiss**

In light of the unsettled nature of the underlying lawsuit and facts in this case, the Court also finds note that the stay will affect all counterclaims in this case, including the issue that is the subject of Plaintiff's Motion to Dismiss.

**II.     <u>Order</u>**

Consistent with the foregoing, Defendant's Motion to Stay (**Doc. 42**) is **GRANTED**. Plaintiff's Motion to Dismiss (**Doc. 35**) is **DENIED WITHOUT PREJUDICE TO REFILING IF AND WHEN APPROPRIATE**.  This case shall be **STAYED** and **ADMINISTRATIVELY CLOSED** until the resolution of the Underlying Lawsuit.   Administrative closure is a docket control device used by the Court for statistical purposes, and it does not prejudice the rights of the parties in any manner.  Upon resolution of the Underlying Lawsuit, the parties may jointly move to re-open the case.


IT IS SO ORDERED.


September 9, 2021                                       s\Cathy Bissoon_____
                                                       Cathy Bissoon
                                                       United States District Judge


cc (via ECF email notification):

All Counsel of Record